**SHAMROCK DEVELOPMENT, INC., Respondent,**

v.

**Denison E. SMITH, et al., Appellants,**

**Dakota Turkey Farms, Limited Partnership, Defendant.**

**No. A06–1647.**

Court of Appeals of Minnesota.

Aug. 21, 2007.

373

Stanford P. Hill, David A. Turner, Bassford Remele, P.A., Minneapolis, MN, for respondent.

Timothy J. Mattson, Charles J. Schoenwetter, Bowman & Brooke, LLP, Minneapolis, MN, for appellants.

Considered and decided by STONEBURNER, Presiding Judge; KALITOWSKI, Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Appellants challenge the district court's denial of their motion to dismiss, arguing that the district court erred in concluding that (1) respondent satisfied the requirements of Minn. R. Civ. P. 4.04(a)(1) for service of process by publication, (2) the affidavit in support of service by publication was not "manifestly false," and (3) the summons was not defective. Because we conclude that the district court properly applied the law and did not abuse its discretion, we affirm.

## FACTS

Farm Credit Leasing Services Corp. (FCL) was engaged in the business of leasing agricultural facilities and equipment. Wild Rice Farms, a Minnesota partnership in which appellants Randall Smith and Denison Smith, Richard Burtness, and others were partners, leased agricultural facilities and equipment from FCL.

In September 1991, Wild Rice Farms assigned its obligations under the lease to defendant Dakota Turkey Farms (Dakota), a Minnesota limited partnership in which the Smiths, Burtness, and others were partners. These partners, including the Smiths, jointly and severally guaranteed Dakota's obligations under the lease. In a separate transaction, Burtness leased agricultural facilities from FCL. Wild Rice Farms's partners, including the Smiths,

jointly and severally guaranteed Burtness's obligation under the second lease.

Subsequently, Dakota and Burtness defaulted on both leases. In April 1993, the parties entered into a settlement agreement and a "Stipulation for Entry of Judgment," which acknowledged the debt and that the Smiths were each "individually and jointly and severally indebted to FCL." The Smiths and their co-obligors subsequently defaulted on their payments, and FCL filed the stipulation with the court and sought judgment. In April 1996, the Hennepin County District Court entered judgment against the Smiths and the rest of the debtors in the amount of $825,620.79. Shortly thereafter, FCL assigned the judgment to respondent Shamrock Development, Inc. (Shamrock). Following the assignment, Burtness was released from the judgment, but the Smiths and Dakota remained as judgment debtors.

Before the ten-year limitation on actions to enforce judgments expired, Shamrock sought to locate the Smiths in order to bring an action to renew the judgment. Using Accurint, an Internet database that is widely used to locate persons for service of process, Shamrock learned that from April 1996 to October 2000, both of the Smiths used an address in Medina, Minnesota. That address, which is a private residence in Medina, was, and continues to be, the registered address for service of process on Dakota. Shamrock attempted personal service on both the Smiths and Dakota, but it was unsuccessful. Shamrock later completed personal service on Dakota by serving the summons and complaint on the Minnesota Secretary of State.

Subsequently, Shamrock searched the U.S. Bankruptcy Court filings for Denison and Randall Smith, but was unable to locate them. Shamrock then hired a private investigator, who located and personally served Denison Smith with the summons and complaint at his home in Fairfax, Virginia.

Because Shamrock was unable to locate Randall Smith, it commenced service by publication under Minn. R. Civ. P. 4.04(a)(1). Less than ten days after the completion of publication, the Smiths filed a limited and special appearance and challenged personal jurisdiction. Shamrock then served a copy of the complaint on the Smiths' attorney under Minn. R. Civ. P. 4.042.

The Smiths moved to dismiss the complaint for lack of jurisdiction. Following a hearing, the district court denied the motion to dismiss. Subsequently, the district court denied appellants' motion for reconsideration. Appellants then filed two appeals with this court. In the present appeal, appellants challenge the district court's denial of their motion to dismiss for lack of jurisdiction, arguing that the summons was invalid and that service of process was insufficient. In a second appeal, appellants challenged the order denying their motion to reconsider, which order concluded that the judgment had been renewed. This court dismissed the second appeal because an order denying a motion to reconsider is not independently appealable.[1]

## ISSUES

I. Did the district court err in determining that service of process by publica-

---

1. On appeal from an order, the appellate court may review any other orders affecting the order from which the appeal is taken. Minn. R. Civ.App. P. 103.04. Although the August 30 order is not independently appealable, this panel may consider that order. *See*

*Rettke v. Rettke,* 696 N.W.2d 846, 850 (Minn. App.2005) (holding that when an appeal is properly taken from an underlying judgment, the court of appeals has discretion to review a subsequent order denying a motion to vacate).

tion on Randall Smith was sufficient to confer jurisdiction?

II. Did the district court err in determining that the summons served on appellants was valid?

III. Should this court strike portions of appellants' appendix and brief?

## ANALYSIS

### I.

Appellants argue that Shamrock failed to comply with the requirements of Minn. R. Civ. P. 4.04, which governs service of process by publication. Appellants specifically argue that Shamrock failed to renew its judgment on a timely basis and failed to satisfy the requirements for service by publication. We disagree.

### A. *Renewal-of-Judgment Actions*

A judgment "survives, and the lien continues, for ten years after its entry." Minn.Stat. § 548.09, subd. 1 (2006). But "[n]o action shall be maintained upon a judgment or decree of a court of the United States, or of any state or territory thereof, unless begun within ten years after the entry of such judgment." Minn. Stat. § 541.04 (2006).

The procedure for renewing a judgment is not specifically prescribed by statute, but caselaw indicates that actions are routinely brought to renew judgments so that the judgments extend beyond the initial ten-year period. For example, in *Tharp v. Tharp*, our supreme court addressed "an action to renew a judgment." 228 Minn. 23, 23, 36 N.W.2d 1, 2 (1949). Although the case focused on the validity of the summons, the court implicitly concluded that a party may bring an action to renew a

judgment as long as the ten-year limitations period on the judgment has not expired. *Id.* at 26–27, 36 N.W.2d at 3–4. In a more recent case, *Haas v. Brandvold*, this court also addressed the procedure for pursuing an action to renew a prior judgment. 418 N.W.2d 511, 513 (Minn.App. 1988). This court analyzed the sufficiency of service of the summons and complaint under Minn. R. Civ. P. 4.01 and 4.03 and determined that because service had been sufficient and had been completed within ten years of the original judgment, the district court did not err in concluding that it had jurisdiction to consider the renewal action. *Id.* at 513–14.

■ We conclude that a party may bring an action to renew a judgment, provided that (1) the action is commenced within ten years after entry of the original judgment, and (2) the party complies with all the requirements for commencing a civil action. Appellants argue that Shamrock was not diligent because it did not start its search and commence the action until shortly before the statute of limitations was to expire. *See generally Tharp*, 228 Minn. 23–24, 36 N.W.2d at 2; and *Haas*, 418 N.W.2d at 512–13. But here, Shamrock conducted its search for appellants, filed the necessary pleadings with the court, and completed service by publication within the ten-year statutory period for renewal-of-judgment actions. Accordingly, we conclude that Shamrock properly commenced its action to review judgment.

### B. *Service of Process*

Appellant Randall Smith contends that Shamrock "failed to comply with the requirements of Minn. R. Civ. P. 4.04" for service of process by publication.[2] In Minnesota, service of process is proper

---

2. Denison Smith was served personally with a summons and complaint and does not chal-
lenge service of process.

when a defendant is served with a summons. Minn. R. Civ. P. 3.01; *see also Wallin v. Minn. Dep't of Corr.*, 598 N.W.2d 393, 400 (Minn.App.1999) (explaining that an action in Minnesota begins with service of the summons), *review denied* (Minn. Oct. 21, 1999). Absent proper service of process or a waiver thereof, the district court must dismiss the action. *Uthe v. Baker*, 629 N.W.2d 121, 123 (Minn. App.2001). A plaintiff may accomplish service of process by personal service within the state under Minn. R. Civ. P. 4.03, publication under Minn. R. Civ. P. 4.04(a), or by personal service outside of the state under Minn. R. Civ. P. 4.04(b).

■ Compliance with the rules governing the commencement of an action is a jurisdictional requirement. *Schuett v. Powers*, 288 Minn. 542, 544, 180 N.W.2d 253, 254 (1970). Rule 4.04(a) provides that service by publication shall be sufficient to confer jurisdiction "(1) when the defendant is a *resident individual domiciliary* having departed from the state with intent to defraud creditors, or to avoid service, or [the defendant] remains concealed therein with the like intent[.]" Minn. R. Civ. P. 4.04(a)(1) (emphasis added).

Randall Smith first argues that review of the district court's order regarding service by publication is de novo. Shamrock agrees that whether an action has been commenced in accordance with the rules is a jurisdictional issue, which we review de novo. But Shamrock argues that the district court's findings regarding the factual assertions in the affidavit of publication are reviewed under the clearly erroneous standard. We agree with Shamrock.

■ Whether a summons has been properly served is a question of law subject to de novo review. *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 814 (Minn. App.1992), *review denied* (Minn. July 16, 1992); *see also McBride v. Bitner*, 310 N.W.2d 558, 561–63 (Minn.1981) (applying de novo review when considering whether service was proper). Thus, we review de novo the jurisdictional question of whether Shamrock complied with rule 4.04. But whether the defendant "is a resident individual domiciliary" who has departed from the state "with intent to defraud creditors or avoid service" is a question of fact. *See* Minn. R. Civ. P. 52.01; *Lundgren v. Green*, 592 N.W.2d 888, 890 (Minn.App. 1999) (stating that "[t]he location of a person's usual place of abode is a question of fact, and the decision of the district court will not be reversed unless it is clearly erroneous") (quotation omitted), *review denied* (Minn. July 28, 1999). We conclude that the district court's findings of fact regarding the affidavit of publication are subject to the clearly erroneous standard of review. We now turn to the sufficiency of the affidavit of publication.

■ Essentially, Randall Smith makes three arguments. First, he argues that the affidavit in support of publication does not contain the required jurisdictional facts. We disagree. Service by publication is sufficient to confer jurisdiction over a party only if the affidavit in support of publication contains the required jurisdictional facts. *Schuett*, 288 Minn. at 543, 180 N.W.2d at 254. The required jurisdictional facts are as follows: the affidavit in support of publication "shall state the existence of one of the enumerated cases, and that [the] affiant believes the defendant is not a resident of the state or cannot be found therein, and either that the affiant has mailed a copy of the summons to the defendant at the defendant's place of residence or that such residence is not known to the affiant." Minn. R. Civ. P. 4.04(a).

Here, Shamrock's affidavit stated that (1) Randall Smith is a "resident individual domiciliary who has departed from the

state of Minnesota with intent to defraud creditors, or to avoid service, or remains concealed with the like intent," (2) Randall Smith is not a resident of the state and cannot be found herein, and (3) Randall Smith's place of residence or address is unknown for service of process. Thus, the affidavit contained the required jurisdictional facts.

　　 Second, Randall Smith argues that he was never a resident of Minnesota, and, therefore, the affidavit in support of publication was "manifestly false." An affidavit must be supported by "good faith that [the defendant] cannot be found in the state." *Van Rhee v. Dysert*, 154 Minn. 32, 35, 191 N.W. 53, 54 (1922). A "good faith" affidavit is required to show that the party and attorney used "due diligence in making a search for the defendant." *Id.* Whether a party's efforts at service were diligent is a question of fact. *Duresky v. Hanson*, 329 N.W.2d 44, 49 (Minn.1983). The steps necessary to constitute a diligent search can vary by case, but the plaintiff must be able to demonstrate that he or she has reasonably attempted to find the defendant and has been unsuccessful. *Id.* at 49; *see also Van Rhee*, 154 Minn. at 35, 191 N.W. at 54 (holding that a search was diligent when a plaintiff made repeated inquiries of numerous persons at places in the county in which the defendant was believed to reside, sought information "touching the whereabouts" of the defendant from several county officers and various places of business, and looked for financial records regarding the defendant and his heirs).

　　 Here, the record supports the district court's finding that Shamrock conducted a diligent search. Shamrock's attorneys conducted an Accurint search, which revealed a residential address that was connected to both appellants between 1996 and 2000, and it attempted to serve

process at that address. Shamrock also searched bankruptcy court filings and was unable to locate either appellant. Shamrock then employed a private investigator, who located Denison Smith in Virginia. But the private investigator and Shamrock were unable to locate Randall Smith.

　　Randall Smith, nonetheless, argues that Shamrock could have called appellants' former attorney or made additional use of previous addresses contained in affidavits of debtor identification that were filed in connection with the original judgment. But the affidavits of identification were submitted by FCL's attorneys, and the information contained therein was older than the information uncovered by Shamrock's Accurint search. And Shamrock's attorneys presented evidence showing that the same search methods they used here had been used successfully to locate parties for service in previous cases. Also, Minnesota law imposes no requirement on the length of time that a party must search before that search may be considered "diligent." *See Abu–Dalbouh v. Abu–Dalbouh*, 547 N.W.2d 700, 703 (Minn.App.1996) (stating that "[e]ven though service by publication is not a reliable means of notifying interested parties, Minnesota recognizes service by publication in situations where it is not reasonably possible or practicable to give more adequate warning") (quotation omitted).

　　Third, relying on *McBride*, 310 N.W.2d at 562, Randall Smith argues that Shamrock has not proven that he "is a resident individual domiciliary having departed from the state," as required by Minn. R. Civ. P. 4.04(a)(1). But *McBride* is distinguishable.

　　In *McBride*, a defendant in a wrongful-death suit was a resident of Minnesota at the time of the accident but subsequently moved out of the state. *Id.* at 560. Shortly before the statute of limitations was to

expire, the plaintiff attempted to locate the defendant for service of process. *Id.* Believing that the defendant was a resident of Wright County, Minnesota, the plaintiff forwarded the summons and complaint to a sheriff for personal service. *Id.* When the sheriff returned the summons and complaint stating that the defendant had moved and could not be found, plaintiff's counsel filed an affidavit stating that a diligent effort to locate the defendant had been unsuccessful and obtained an ex parte order purporting to authorize service by publication. *Id.* The supreme court stated that "[i]t is apparent from a reading of [rule 4.04(a)(1)] that it did not authorize publication merely because plaintiffs' attorney had made diligent but unsuccessful efforts to locate defendant in this state." *Id.* at 562.

■ Our case is factually distinguishable because, unlike the plaintiff in *McBride,* Shamrock submitted an affidavit under rule 4.04 and expressly stated the required jurisdictional facts. Also, the district court conducted an evidentiary hearing in this case to determine whether the affidavit complied with the rule. Following the hearing, the district court found that Shamrock had exercised due diligence in attempting to locate Randall Smith, that the affidavit was made in good faith, and that the factual assertions therein were supported by the record.

We read rule 4.04(a)(1) to require that Shamrock establish that the affidavit was made in good faith, that the factual assertions are supported by the record, and that Shamrock exercised due diligence in attempting to locate Randall Smith. Here, the district court found that Shamrock's affidavit was made in good faith, that Shamrock had reason to believe that Randall Smith was a resident of Minnesota but had left the state with intent to defraud creditors or avoid service of process, and that Shamrock had exercised due diligence in attempting to locate Randall Smith. The record supports the district court's findings, and they are not clearly erroneous.

## II.

Appellants argue that the summons was defective because it failed to provide information about alternative dispute resolution (ADR) as required by Minn.Stat. § 543.22 (2006).

The interpretation of a statute or rule raises a question of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998) (interpreting statute); *Barrera v. Muir,* 553 N.W.2d 104, 108 (Minn. App.1996) (interpreting rules of civil procedure), *review denied* (Oct. 29, 1996). We interpret the words of a statute according to their plain and ordinary meaning. *See* Minn.Stat. § 645.08(1) (2006) (mandating that words and phrases be construed according to their common and approved usage). The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (2006). The rules of civil procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Minn. R. Civ. P. 1. We turn to the applicable rule and statute.

In 1951, the Minnesota Supreme Court adopted rules of civil procedure to govern all suits of a civil nature, subject to certain exceptions. Rule 4.01, which was adopted in 1951 [3] and has been amended from time to time, states that a summons must

---

3. Previously, Minn.Stat. § 534.02 set forth the requirements for a summons. But it was superseded by rule 4.01, which currently governs the general requirements for summons.

state the name of the court and the names of the parties, be subscribed by the plaintiff or by the plaintiff's attorney, give an address within the state where the subscriber may be served in person and by mail, state the time within which these rules require the defendant to serve an answer, and notify the defendant that if the defendant fails to do so judgment by default will be rendered against the defendant for the relief demanded in the complaint.

Minn. R. Civ. P. 4.01. Here, the district court determined that the summons complied with the rule and that the failure to include the notice of ADR required under Minn.Stat. § 543.22 was not fatal to jurisdiction. We agree.

In 1999, the legislature enacted Minn. Stat. § 543.22, which provides:

> When a civil case is commenced against a party, the summons must include a statement that provides the opposing party with information about the alternative dispute resolution process as set forth in the Minnesota General Rules of Practice.

The statute does not provide a remedy for failure to comply with the statute. Rule 114 of the general rules of practice provides that ADR is required for nearly all civil cases filed in district court. Minn. R. Gen. Pract. 114.01. But the rules do not refer to Minn.Stat. § 543.22 or provide a remedy for failure to comply. Thus, we discern no legislative intent that the failure to include the required ADR information in the summons is fatal to jurisdiction. Clearly, the legislature intended to leave to the courts the enforcement of the statute through the rules of general practice.

 Appellants rely heavily on *Tharp*, 228 Minn. 23, 36 N.W.2d 1 to argue that the summons is defective. In *Tharp*, the defendant moved to dismiss on the ground that the summons did not comply with the provisions of Minn.Stat. § 543.02, which was the statute that set forth the requirements for a summons at that time. *Id.* at 24, 36 N.W.2d at 2. The supreme court granted the motion to dismiss, reasoning that the summons (1) incorrectly stated that the defendant needed to *appear* in court within 20 days, (2) contained *no* information alerting the defendant that he was required to answer the complaint, and (3) contained *no* address at which an answer could be served. *Id.* at 26–27, 36 N.W.2d at 3. The *Tharp* court concluded that the summons was fatally defective because it failed to comply with the requirements of a summons, which would enable the defendant to answer and defend. *Id.* The court reasoned that although the requirements of the statute should be liberally construed to avoid dismissing an action due to "technical and formal" defects, the summons must be sufficient to inform the defendant of the essential matters the statute requires so that the defendant can answer and defend the claim. *Id.*

Here, the summons contained all the requirements set forth in rule 4.01. Although the summons did not include the ADR information, this omitted information was not essential for appellants to answer and defend the claim and was, therefore, in the nature of a technical defect. *Cf. Haas*, 418 N.W.2d at 513 (holding that the failure to include statutorily required signed acknowledgment of potential liability for costs and disbursements in a complaint was not jurisdictional defect requiring district court to dismiss case). Therefore, we conclude that the district court did not err in determining that the summons was sufficient and in denying the motion to dismiss.

### III.

 Shamrock moves to strike portions of appellants' appendix, and all refer-

ences thereto because they were filed after the order denying the motion to dismiss and outside the record of this appeal. Appellants argue that the material contained in the appendix is part of the motion for reconsideration and, therefore, is properly before this court. Generally, documents may not be included in a party's brief unless they are part of the appellate record. *Fabio v. Bellomo,* 489 N.W.2d 241, 246 (Minn.App.1992), *aff'd,* 504 N.W.2d 758 (Minn.1993). Here, appellants' appendix contain materials that would have been part of the record of the second appeal filed in this matter, but that case was dismissed. Although those materials are instructive regarding the procedural history of that appeal, they are outside the record with respect to the merits of this appeal and are therefore stricken.

## DECISION

Because the summons substantially complied with the applicable rules and statutes, and because the district court did not clearly err in determining that Shamrock complied with the rules regarding service of process, the district court did not err in denying appellants' motion to dismiss.

**Affirmed; motion granted.**